UNITED STATES of America and Tobe H. Todd, Jr., Revenue Agent, Internal Revenue Service, Petitioners,

v.

Charles THEODORE, as Vice-President of Theodore Accounting Service, P.A. and Theodore Accounting Service, a Professional Association, Respondents.

Civ. A. No. 72–950.

United States District Court,
D. South Carolina,
Greenville Division.

Sept. 14, 1972.

J. D. McCoy, Asst. U. S. Atty., Greenville, S. C., John M. Dowd, Tax Division, Dept. of Justice, Washington, D. C., for the Government.

Robert A. Dobson, III, of Dobson & Dobson, Greenville, S. C., for defendants.

## ORDER TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS

HEMPHILL, District Judge.

This compliance motion came on to be heard at 10:00 a. m. on August 14, 1972, pursuant to an order entered by this court on July 31, 1972, directing the respondents, Charles Theodore as Vice-President of Theodore Accounting Service, P.A. and Theodore Accounting Service, a Professional Association to show cause why they should not be compelled to comply with the terms of an Internal Revenue Service summons admittedly served upon them on May 8, 1972, requiring the production of the corporate records used by respondents in the preparation of tax returns of their clients and customers. The hearing originally set for August 7, 1972, was reset for August 14, 1972, at the request of the petitioners.

Respondents moved to dismiss the petition on the ground that they could not be pursued in their corporate capacity (which they denied) because no articles of incorporation had been filed as required by state statute.[1] Respondents' contention is two-fold pronged. They maintain that South Carolina has adopted the principle of the Model Business Corporation Act which sets the filing of articles of incorporation as the decisive factors in determining the existence or nonexistence of the corporation. They also contend that the concepts of *de jure* corporation, *de facto* corporation and corporation by estoppel do not apply when the filing of the articles of incorporation is the determining factor of corporate existence. Respondents argue

---

1. Section 56–1604, Code of Laws of South Carolina, (1971 Supp.) provides:

Articles of association; filing; recordation; amendment; dissolution; name of association.—Qualified persons may form a professional association by executing and recording articles of association in the office of the clerk of court in the county in which the association's principal office is located. The clerk shall record the articles of association and any amendments thereto or instruments of dissolution thereof in a separate book to be kept for that purpose. The clerk of court shall receive as fees for recording any original articles of association or amendments thereto the sum of five dollars plus fifteen cents for each one hundred words contained in the particular document recorded. The articles of association shall not be required to be published or recorded elsewhere. The record of the articles of association, when so recorded, shall be notice of the provisions of the articles to the world as well as to all parties dealing with the association. The persons forming the professional association shall adopt a suitable name for the association. *Provided*, that the name selected shall be followed by the words "Professional Association" or the abbreviation "P.A.". The articles of association may contain any provision not in violation of law or the public policy of this State as the members of the association may decide. The articles may be amended or dissolved at any time by agreement of two thirds of the members at any regular meeting or at a special meeting called for that purpose. The amendment or instrument of dissolution shall be recorded in the same place as the original articles of association.

that they are a partnership and as such cannot be sued in a corporate capacity and are thus justified in refusing to produce the records based upon the Fifth Amendment privilege against self-incrimination.

■■ The claim of the respondents is without merit. Initially, assuming *arguendo* the facts in the motion are true, Rule 17(b)(1)[2] of the Federal Rules of Civil Procedure. provides: " * * * that a partnership or other unincorporated association, * * * may * * * be sued in its common name for the purpose of enforcing * * * against it a substantive right existing under the * * * laws of the United States * * *." See Petrol Shipping Corporation v. Kingdom of Greece, Ministry of Commerce, Purchase Directorate (CCA 2 1966), 360 F.2d 103; 6 Wright and Miller Federal Practice and Procedure (1971) pp. 743–747; 3A Moore's Federal Practice (2d Ed.), pp. 851–856. In addition, the evidence introduced and admitted into evidence for the petitioners clearly shows that the respondents held themselves out to be a corporation to the general public and to both the governments of South Carolina and the United States. They filed corporation tax returns, state and federal. No partnership return was filed on state or federal level. None of the individuals involved reported any income from a part-

nership. The respondents are therefore estopped to deny the existence and the viability of this corporation. This court will not permit the respondents to change their proverbial hats because a tax investigation is now under way to determine whether their customers have correctly reported income on their tax returns. Nor does this court find any merit in the argument that the law of South Carolina no longer recognizes a *de facto* corporation or a corporation by estoppel. See Bethea v. Allen, 177 S.C. 534, 181 S.E. 893 (1935); Dargan v. Graves, 252 S.C. 641, 168 S.E.2d 306 (1969).[3]

■■ In view of the foregoing, it is clear that the respondents can be sued as corporate entity and that the records sought by the summons are corporate in nature and subject to production. No showing has been made before this court that the records are other than corporate records. It is well-settled that the privilege against self-incrimination is a purely personal one which cannot be invoked by or on behalf of a corporation, United States v. White (1944), 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Hale v. Henkel (1906), 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States (1911), 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Essgee Co. of China v. United States (1923), 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917, and the

2. Fed.R.Civ.P. 17(b) provides: Capacity to Sue or be Sued.

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed

by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., §§ 754 and 959(a).

3. This case is authority for invoking an estoppel where the party(s) involved holds himself out as an officer or agent of a corporation [we think that the participation by Graves as a member of the Coastal Development Company of Conway, Inc., and the transaction by him of the business in the corporate name estops him to deny its valid existence * * * [168 S.E.2d 310]]. This court takes cognizance of the treatment of the South Carolina court of last resort, wherein a party is not allowed to use one image for business advantage, switch to another to avoid its impact.

records held by Charles Theodore as Vice-President of Theodore Accounting Service, P.A. cannot be the subject of the privilege against self-incrimination, even though production of. the papers might tend to incriminate him personally. Wilson v. United States, supra; United States v. White, supra; Grant and Burlingame v. United States (1913), 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423; Wheeler v. United States (1913), 226 U. S. 478, 33 S.Ct. 158, 57 L.Ed. 309; Essgee Co. v. United States, supra. Accordingly, the motion to dismiss should be denied and the Fifth Amendment privilege of Charles Theodore is no bar to production of the summoned records.

In the afternoon of August 14, 1972, the respondents were permitted to file an answer to the petition and were granted an additional hearing to state their objections to the enforcement of the instant summons. Rule 81(a)(3)[4], Federal Rules of Civil Procedure; Donaldson v. United States (1971), 400 U.S. 517, 528–529, 91 S.Ct. 534, 27 L.Ed.2d 580; United States v. Newman (CCA 5 1971), 441 F.2d 165, 168–169.

At the hearing respondents claimed: (a) that the summons was issued for the alleged sole purpose of gaining information for a purported criminal prosecution of Charles Theodore; (b) that Theodore Accounting Service, P.A. is not a legal entity and the summoned records are the individual property of John Theodore, Charles Theodore and Louis Manios; (c) the production of the records would violate the Fourth and Fifth Amendment privileges of Charles Theodore; (d) the records are not relevant to any taxpayer's return or the collection of any tax from any taxpayer under examination and (e) that the summons is so broad in scope as to constitute an unreasonable search and seizure.

In response, counsel for the petitioners made an undisputed offer of proof which substantially refuted the facts set out in the affidavit of Charles Theodore attached to the answer. Respondents did not present any evidence in support of their objections, except an affidavit of Mr. Theodore pertaining to the criminal purpose argument, even though Mr. Manios and Mr. Theodore were present in the courtroom. Moreover, counsel for the respondents declined the court's invitation to hear the testimony of the agents of the Government who were also present and prepared to testify. United States v. Powell (1964), 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112.

The Government, in its offer of proof which is undisputed, advised the court that the instant summons was issued as part of the Tax Preparers Project instituted by the Commissioner of Internal Revenue as authorized by 26 U.S.C. § 7601.[5] Apparently agents from all three branches (Intelligence, Collection and Audit) of the Internal Revenue Service were utilized by the District Director to canvass the District and determine if tax preparers were correctly preparing tax returns. This project was effectuated by selecting preparers and sending an undercover agent with assumed informa-

---

4. Rule 81(a)(3) provides (in part):

(3) These rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court, or by order of the court in the proceedings.

5. 26 U.S.C. § 7601(a) provides: Canvass of districts for taxable persons and objects.

(a) General rule.—The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.

tion to the preparers for the preparation of a tax return. In the instant case, this was done and it was found that Charles Theodore improperly prepared the return using the assumed information. At that point, a decision was made, either to arrest the subject and refer the matter to the United States Attorney for presentation to a grand jury and subsequent prosecution, or to issue a cease and desist letter to the preparer and asked him to turn over his records or a list of the taxpayers for whom returns were prepared so that an audit could be conducted of those returns to determine their correctness. In this case, a Special Agent assigned to the project and Revenue Agent Todd delivered the cease and desist letter to the respondents and asked that the records or a list be produced. Respondents declined to produce the same which precipitated the issuance and service of the instant summons by Revenue Agent Todd.

The court is informed that the Intelligence Division is not presently conducting an investigation of the respondents in either their corporate or individual capacities. No criminal prosecution is *in esse* nor has one been recommended against the respondents in any capacity. The intelligence agents participating in the instant case were a part of the team of agents assigned to conduct the project.

When the summoned records are produced, the Audit Division will conduct audits to ascertain the correctness of all the returns prepared by the respondents during the years 1969 through 1971. If fraud on the part of the respondents or the taxpayer appears in the audit, the matter may then be referred to the Intelligence Division for further investigation and the activities of any Government agents will be governed accordingly.

■■ In any event, counsel for the respondent erroneously assumes that a Section 7602 [6] summons can be utilized only to investigate civil tax liability. The Supreme Court of the United States has held otherwise in the case of Donaldson v. United States, supra. There the Court held, 400 U.S. at page 536, 91 S.Ct. at page 545:

> \* \* \* an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

In the instant case, there has been no recommendation for prosecution and there is no evidence showing a lack of good faith on the part of the agents in this case. United States v. Powell, supra, p. 58. This court finds good faith, on the part of the Government, exists; no recommendation for a criminal prosecution has been made.

■ With respect to the claim that the summons is too broad, unreasonable or not relevant, it is clear from the body

---

6. 26 U.S.C. § 7602 provides: Examination of books and witnesses.

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

of the summons that the records are described with reasonable particularity and that the information sought would clearly have a bearing on the correctness of the tax returns of those persons for whom the respondents prepared returns. Oklahoma Press Publishing Co. v. Walling (1946), 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614; Bouschor v. United States, (CCA 8 1963), 316 F.2d 451; United States v. Giordano, 419 F.2d 564 (CCA 8 1969); cert. denied 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648; United States v. Held, 315 F.Supp. 352 (E.D.Tenn.1970), affirmed 435 F.2d 1361 (CA 6 1970), cert. denied 401 U. S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 545; McGarry v. Securities & Exchange Commission (CCA 10 1945) 147 F.2d 389.

■ Apparently, respondents are concerned because no particular taxpayer is named as being under investigation. This presents no difficulty because the Commissioner is trying to ascertain the names of the persons for whom the respondents prepared returns. There is no question that returns were prepared by the respondents for certain persons during the three years involved. It would, indeed, be an anomaly if the Commissioner could have the power to determine the correctness of any return or the correctness of any tax liability but did not have the power to summon a person to give the names of taxpayers whose returns were prepared by that person. There is nothing in Sections 7601 and 7602 which require the Commissioner to know the name of the taxpayer before he exercises the summons power under Section 7602. It is recognized that in the normal course the taxpayer's name is known. However, here the Commissioner has started his inquiry with the preparer. Section 7601 " * * * flatly imposes upon the Sec-

retary the duty to canvass and to inquire * * * " and Section 7602 states " * * * for the purpose of ascertaining the correctness of *any* return * * * " [Emphasis supplied] Donaldson v. United States, 400 U.S., supra, pp. 523–524, 91 S.Ct. p. 539, 27 L.Ed.2d 580. The Commissioner has ample power granted by Congress to inquire and to obtain the names of these taxpayers by the use of the Section 7602 summons.

The claim that Theodore Accounting Service, P.A. is not a legal entity is without merit as stated earlier and there is no evidence before the court that the records are personal records. United States v. White, supra.

■ At the hearing, respondents complained that the Commissioner already had the returns in his possession and therefore could not summon copies of the same from the respondents. 26 U.S.C. § 7605(b)[7]. Practically, it would constitute an enormous and unjustifiably expensive undertaking for the Commissioner to search all of the returns in Chamblee, Georgia, to find those returns prepared by the respondents. This project will be facilitated by the production of the copies of the returns in the possession of the respondents. It is not an abuse of this court's process to require the respondents to assist the Commissioner by producing the returns. United States v. Powell, supra, 379 U.S. p. 58, 85 S.Ct. 248, 13 L.Ed.2d 112.

The court has considered and read all of the pleadings, affidavits, exhibits and memoranda filed by the parties. It has heard and considered all of the testimony, and the representations and arguments of counsel and is generally advised in the premises. Based upon the foregoing, it is hereby directed:

Respondents' motion to dismiss is denied.

7. 26 U.S.C. § 7605(b) provides: Restrictions on examination of taxpayer.— No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

Charles Theodore, Vice-President, Theodore Accounting Service, P.A., shall appear before the petitioner, Revenue Agent Tobe H. Todd on September 25, 1972, at 10:00 a. m. at 300 East Washington Street, Greenville, South Carolina, and then and there produce for examination and/or copying by photocopy or other mechanical means of reproduction, the following books, records and papers:

(a) All accounting records, workpapers, correspondence, memoranda and other documents in the possession of or used by Theodore Accounting Service, P.A., in connection with the preparation of all Federal Income Tax Returns for customers and clients of Theodore Accounting Service, P. A., for the years 1969, 1970 and 1971.

(b) All retained copies of 1969, 1970 and 1971 Federal income tax returns, the originals of which were prepared by Theodore Accounting Service, P.A., for customers and clients of Theodore Accounting Service, P.A.

The examination shall continue from day to day until completed.

This Order does not preempt, nor does it preclude, the exercise of any constitutional rights, or the right of respondent Charles Theodore, and others of his associates, to insist on any defense, warning, constitutional privilege or protection in event any investigation is launched by the Intelligence Division of the Internal Revenue Service of the respondents in either their corporate or individual capacities. At such time respondents may present to this court such motions as they, or any of them, or their counsel think appropriate, including a motion to suppress any evidence disclosed as a result of this Order.

The costs of this proceeding shall be taxed against the respondents.

And it is so ordered.